UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **CRIMINAL NO. 3:22-CR-039** |
| **v.** : | **(JUDGE MANNION)** |
| **NICHOLAS HERIBERTO** : **VALLECILLO-TEJADA** | |
| : | |
| **Defendant** | |

## MEMORANDUM

Presently before the court is defendant's motion to dismiss the indictment, (Doc. 26). The defendant filed a brief in support, (Doc. 27), on September 21, 2022. The government filed a brief in opposition, (Doc. 35), on December 2, 2022. The defendant sought a motion for extension of time to file a reply, but did not file a reply. As such, the matter is ripe for disposition. Based upon the court's review of the motion and related materials, the defendant's motion will be denied.

### I.  BACKGROUND

On February 2, 2022, Nicholas Heriberto Vallecillo-Tejada was charged in an Indictment with illegal reentry, in violation of 8 U.S.C. §1326(a). (Doc. 1).

Tejada has a history of illegal entry into the United States. On June 14, 2003, he was arrested and charged with disorderly conduct in Florida. After his arrest, an immigration officer met with Tejada and he received a Notice to Appear before an immigration judge. The notice indicates that Tejada resided at 6201 Arthur Street, Hollywood, Florida 33024 (Doc. 35-1). The Notice of Custody Determination signed by Tejada explains that he was released on his own recognizance and his address was 6201 Arthur Street, Hollywood, Florida 33024. (Doc. 35-2). Additionally, the Notice to the Executive Officer for Immigration Review (EOIR): Alien Address form states that if Tejada was released from custody, he would reside at 6201 Arthur Street, Hollywood, Florida 33024. (Doc. 35-3).

Despite notice being sent to the address on file, 6201 Arthur Street, Hollywood, Florida 33024, Tejada did not appear for his removal hearing on October 7, 2004. (Doc. 35-13). Thus, Tejada was ordered removed *in absentia* by an immigration judge. (Doc. 35-4).

Tejada was not immediately removed after the immigration hearing. Approximately two years later, Tejada was convicted of two separate offenses in 2006: (1) Liquor possession – allowing a minor alcohol at an open house party and (2) resisting an officer. (Doc. 35-5, p.2-3). In 2008, Tejada was convicted of driving without a license. On November 21, 2008, he was

removed from Miami, Florida to Honduras. (Doc. 35-5, p.3). During the removal process, Tejada was issued a "warning" that prohibited him from returning to the United States for a period of ten years. (Doc. 35-6). The warning also contained provisions alerting Tejada that if he entered without legal permission, he could face additional criminal penalties for attempting to enter or entering the United States during this period.

On June 16, 2009, Tejada was apprehended by the U.S. Border Patrol in Brownsville, Texas. Tejada admitted to illegal entry into the United States and being a citizen of Honduras. (Doc. 35-7, p.3). Tejada did not possess any documentation that allowed him to legally enter, reside, or work in the United States. (Doc. 35-7, p.3). While being interviewed, Tejada did not say that he feared persecution, torture, or otherwise if he were returned to Honduras. (Doc. 35-7, p.5 and Doc. 35-8). Moreover, Tejada did not request asylum. He admitted to being previously deported. (Gov. 35-8, p.1). Tejada was then again removed from the United States from Harlington, Texas to Honduras on July 14, 2009. (Doc. 35-5, p.3). Additionally, Tejada received a written "warning" notice explaining that he was prohibited from returning to the United States for a period of twenty years from the date of his departure. (Doc. 35-10). The written "warning" notice contained the same provision

about facing additional criminal penalties for attempting to enter or entering the United States during this period. (Doc. 35-10).

Following his most recent removal, Tejada again entered the United States at an unknown time and place.

On September 5, 2020, Tejada was arrested by the Shenandoah, Schuylkill County, PA, Police Department and charged with "aggravated assault on a victim less than 13 years of age," and related offenses. (Doc. 35-5, p.3). The criminal complaint explained that a group of children was playing nearby a party and Tejada approached the children with a sheathed machete. (Doc. 11). Tejada then removed the machete from the sheath and held it above his head. (Doc. 35-11). Witnesses believed he was going to strike one of the children, but before doing so, he was chased away by some of the party members. (Doc. 35-11). Tejada then fled into a residence where police later arrested him and found a machete by the back door. (Doc. 35-11). Tejada pleaded guilty to two counts of simple assault and was sentenced to eleven and one-half months to twenty-three months in prison. (Doc. 35-5, p.3). Tejada was also sentenced to one year probation for "possessing an instrument of crime." (Doc. 35-5, p.3).

Immigration officials then met with Tejada at Schuylkill County Prison and lodged an immigration detainer against him. During his interview, Tejada

did not express fear for harm or persecution if he was sent back to Honduras. (Doc. 35-12, p.3).

## II.   DISCUSSION

Defendant seeks to challenge the underlying removal order from 2004. The Third Circuit has explained, "Fundamental precepts of due process provide an alien subject to illegal re-entry prosecution under 8 U.S.C. §1326 with the opportunity to challenge the underlying removal order under certain circumstances." United States v. Charleswell, 456 F.3d 347, 251 (3d Cir. 2006). These "certain circumstances" are explained in 8 U.S.C. §1326(d), which explains that the collateral attack of a removal order requires:

> (1) That he exhausted all administrative remedies available to him to appeal his removal order;
> (2) That the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and
> (3) That the entry of the order was fundamentally unfair.

Tejada argues that he is excused from the exhaustion requirement because he was "denied meaningful opportunity for judicial review." (Doc. 27, p.3). Defendant contends that after being released on his own recognizance on May 18, 2004, he never received notice of the removal hearing. Tejada received a "Notice to Appear," which included his rights and explained that the hearing would be conducted on a date and time to be set.

- 5 -

(Doc. 35-1). The "Notice to Appear" contains a statement explaining that an oral notice was provided in the Spanish language explaining the time and place of the hearing and consequences for failure to appear. (Doc. 35-1, p.2). Additionally, Tejada indicates the address he is currently residing at as "6201 Arthur Street Hollywood, Florida 33024. (Doc. 35-1, 35-3, and 35-3). On June 8, 2004, the court sent a "Notice of Hearing in Removal Proceedings" and listed the address as 6201 Arthur Street Hollywood, FL 33024. (Doc. 35-13). Under 8 U.S.C. §1229(c), "Service by mail under this section shall be sufficient if there is proof of attempted delivery to the last address provided in accordance with subsection (a)(1)(F)." Then, Title 8 U.S.C. §1229(a)(1)(F) requires immigrants to provide their address to receive information. If the immigrant does not update their information to receive important documentation, 8 U.S.C. §1229(b)(5)(B) allows for an immigration judge to issue an *in abstenia* removal order.

In addition to defendant's requirement to provide an accurate address, the Third Circuit has explained that there is a presumption that ordinary regular mail properly sent is presumed to be received. <u>Santana Gonzalez v. Att'y Gen of U.S.</u>, 506 F.3d 274, 278 (3d Cir. 2007). This presumption may be defeated by "An alien's affidavit claiming non-receipt of a notice sent by regular mail, along with corroborating circumstantial evidence." <u>Saeteros-</u>

- 6 -

Torres v. Att'y Gen. of U.S., 266 F. App'x 151, 153 (3d Cir. 2008). While Tejada may claim he did not receive notice, he does not overcome the presumption that regular mail is presumed received because there is no affidavit claiming non-delivery and puts forth no additional corroborating circumstantial evidence. As the government additionally argues, Tejada never even attempted to file any change of address form with immigration authorities.

     Next, Tejada argues that because he never received notice of the hearing, he was unaware of his rights pertaining to the hearing and his right to challenge any adverse determinations. (Doc. 27, p.4). However, as Tejada's own exhibits indicate, he was informed of his rights, explained the documents in Spanish, and signed an acknowledgement that he received and was notified of his rights. (Doc. 26-3 and 26-4). The government's exhibit entitled "Notice to Respondent," (Doc. 35-1), clearly explains Tejada's rights and the consequences for failure to appear. This document also contains an acknowledgement by Tejada that he received oral explanation of the document in Spanish and then proceeded to sign the document. (Doc. 35-1).

     Lastly, defendant argues that the removal hearing was fundamentally unfair for two reasons: First, the previously addressed failure to receive

- 7 -

notice argument; and, second, a failure to have counsel or develop an administrative record also results in fundamental unfairness. "[U]nder §1326(d)(3), in order for a proceeding to be 'fundamentally unfair,' the alien must establish both that some fundamental error occurred and that as a result of that fundamental error he suffered prejudice." United States v. Charleswell, 456 F.3d 347, 358 (3d Cir. 2006). There are two avenues to argue fundamental unfairness: the deprivation of an alien's substantive liberty or property right or where an agency has violated procedural protections. Id. at 359-360. Tejada's arguments fall under the second avenue as he argues that his failure to receive notice denied him the opportunity to have counsel present and develop an administrative record. The defendant's cited authority from the Third Circuit, Charleswell, 456 F.3d 347, couches his own arguments with terms such as "could rise to the level" and "may also render the proceeding fundamentally unfair." (Doc. 27, p.5). This does not indicate that the failure of counsel to be present or to develop an administrative record automatically qualifies as fundamental unfairness. Charleswell dealt with a failure to inform the defendant of his rights. As the record indicates here, defendant received notice of his rights in the Spanish language, which he acknowledged on several of the documents. (Doc. 26-3,

26-4, 35-1, and 35-2). As such, Tejada knew of his rights and consequences for his failure to attend the removal hearing.

After reviewing the defendant's arguments, he has failed to meet all three requirements under 8 U.S.C. §1326(d). An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 28, 2023**
22-39-01